IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HUONG GILMER GIACCIO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:26-cv-855-E-BN |
| | § | |
| CITY OF CARROLLTON, ET AL., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Without paying the filing fee, Plaintiff Huong Gilmer Giaccio filed this *pro se* lawsuit alleging claims under 42 U.S.C. § 1983 against the City of Carrollton, a collections manager sued in her individual and official capacities, and John Does 1-10 relating to fines issued by the Carrollton Municipal Court for multiple citations and seeking declaratory and injunctive relief and $1 million in damages. *See* Dkt. No. 3. And United States District Judge Ada Brown referred Giaccio's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

And Giaccio also filed an emergency *ex parte* motion for temporary restraining order seeking to have this Court order the Carrollton Municipal Court to stop seeking to enforce its orders and hold a hearing. *See* Dkt. No. 12.

And the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the motion for a temporary restraining order and dismiss the complaint with prejudice.

**Legal Standards**

A district court is required to screen a civil complaint filed *in forma pauperis* ("IFP") (that is, without payment of the filing fee) and may summarily dismiss that complaint (or any portion of it) if the complaint fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

"The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177; citation omitted).

"[F]airness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (cleaned up; quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007)); *see also Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) ("The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." (citations omitted)).

And these findings, conclusions, and recommendations provide notice, while the period for filing objections affords an opportunity to respond. *See, e.g., Starrett,*

2018 WL 6069969, at *2 (citations omitted).

And, because "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute,'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999) (citations omitted).

And, if the party invoking federal jurisdiction fails to establish it, the lawsuit must be dismissed. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Because federal jurisdiction is not assumed, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

As to dismissal for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, just "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557). On the other hand, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). And, while a court must accept a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). In fact, "the court does not 'presume true a number of categories of statements, including,'" in addition to legal conclusions, "'mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021)).

And, so, to avoid dismissal, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby,*

*Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e));
*see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899
(5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief'
is 'a context-specific task that requires the reviewing court to draw on its judicial
experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

And, for a request for a temporary restraining order or preliminary injunctive
relief, such an injunction is "an extraordinary and drastic remedy, not to be granted
routinely, but only when the movant, by a clear showing, carries the burden of
persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (internal
quotation marks omitted). As "[a] TRO is simply a highly accelerated and temporary
form of preliminary injunctive relief," "[t]o obtain a temporary restraining order, an
applicant must show entitlement to a preliminary injunction." *Horner v. Am. Airlines,
Inc.*, No. 3:17-cv-665-D, 2017 WL 978100, at *1 (N.D. Tex. Mar. 13, 2017) (cleaned
up).

"To be entitled to a preliminary injunction, the applicant must show (1) a
substantial likelihood that he will prevail on the merits, (2) a substantial threat that
he will suffer irreparable injury if the injunction is not granted, (3) his threatened
injury outweighs the threatened harm to the party whom he seeks to enjoin, and
(4) granting the preliminary injunction will not disserve the public interest."
*Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir.
2009) (internal quotation marks omitted). The United States Court of Appeals for the
Fifth Circuit "has repeatedly cautioned that [such relief] should not be granted unless

- 5 -

the party seeking it has clearly carried the burden of persuasion on all four requirements." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (cleaned up).

### Applicable Background

This action is one of five that Giaccio has filed in this Court since October 2024, including three other cases relating to the code enforcement proceedings by the City of Carrollton and two other cases filed the same day as this one. *See Giaccio v. Davis*, No. 3:24-cv-2469-B-BW (filed Oct. 2, 2024); *Giaccio v. Lyon*, No. 3:24-cv-3005-E-BN (filed Dec. 2, 2024); *Giaccio v. Ortega*, No. 3:26-cv-851-G-BW (filed Mar. 17, 2026); *Giaccio v. John Doe Dall. Police Off'r #1*, No. 3:26-cv-854-B-BW (filed Mar. 17, 2026).[1] In each case, Giaccio applied to proceed IFP but has provided inconsistent information between the cases as well as information inconsistent with facts pled in and documents attached to the complaints. *See, e.g.*, *Giaccio v. Davis*, 2025 WL 2550587, at *1-2 (N.D. Tex. Aug. 28, 2025) (discussing inconsistences and omissions in the IFP motion for Giaccio's first filed case), *rec. accepted*, 2025 WL 2550586 (N.D. Tex. Sept. 4, 2025); *John Doe Dall. Police Off'r*, No. 3:26-cv-854-B-BW, Dkt. No. 17 (responding to questionnaire about information omitted from IFP application, including rental property discussed in amended complaint and spouse's income); *Ortega*, No. 3:26-cv-851-G-BW, Dkt. No. 10 (same).

Giaccio asserts that she has requested and been granted community service for her municipal citations. *See* Dkt. No. 3 at 2; Dkt. No. 5 at 5. But, notably, the order

---

[1] The Court takes judicial notice of the filings in Giaccio's other cases, including voluminous records from and related to the Carrollton Municipal Court proceedings filed in those cases.

granting community service lists only six cause numbers while other documents list far more cause numbers. *Compare* Dkt. No. 5 at 5, *with* Dkt. No. 5 at 20 (listing 54 cause numbers). A review of public records for the City of Carrollton of which this Court may take judicial notice reflect that Giaccio has 50 outstanding citations with fines totalling more than $26,000. *See* City of Carrollton Municipal Payment System, https://carrolltontx.municipalonlinepayments.com/carrolltontx/court/search (last accessed June 26, 2026). Further, Giaccio admits that she has been offered a payment plan but has refused to accept this alternative. *See* Dkt. No. 3 at 2; Dkt. No. 5 at 10, 11; *see also Lyon*, No. 3:24-cv-3005-E-BN, Dkt. No. 3-2 at 40 (Carrollton Municipal Court form for alternative financial arrangements).

Giaccio alleges that she has "already been arrested multiple times" and provides documentation of an arrest on September 30, 2024 with release on October 1, 2024. *See* Dkt. No. 3 at 2; Dkt. No. 5 at 4. And she further alleges that she has been threatened with future arrests. *See* Dkt. No. 3 at 2; Dkt. No. 12 at 1.

Giaccio also has submitted a copy of a final notice requiring her to appear in the Carrollton Municipal Court on September 30, 2024 at 1 pm. *See* Dkt. No. 5 at 6; *see also, e.g., Lyon*, No. 3:24-cv-3005-E-BN, Dkt. No. 3 at 45-47, Dkt. No. 3-2 at 51-54 (other examples of court notices and acknowledgements signed by Giaccio that arrest warrant will be issued if she fails to appear on time for collections hearings); *id.* Dkt. No. 3 at 39 (order to appear at community service showcause docket, cautioning arrest for failure to appear). The final notice from the Carrollton Municipal Court submitted in this case states that Giaccio failed to pay the balance "despite the

Court's previous attempts to contact you and provide you with an opportunity to make appropriate arrangement to: (1) pay the outstanding fines/costs/fees due, (2) request community service, or (3) request a waiver of the entire fine due." Dkt. No. 5 at 6. Because of her prior failure to respond to notices of default, the case became "subject to process for ISSUANCE OF A CAPIAS PRO FINE WARRANT." *Id.* And the notice explains that an arrest warrant will issue if she fails to pay the amount due or appear in court. *Id.*

## Analysis

I.    <u>The Court should dismiss Giaccio's complaint</u>.

Giaccio alleges a Fourteenth Amendment claim under *Bearden v. Georgia*, 461 U.S. 660 (1983), based on the denial of her requests for community service. *See* Dkt. No. 3 at 2. And she specifically asserts claims against a collections manager because she only offered to provide a payment plan, not community service. *Id.* She also alleges a claim against the City of Carrollton under *Monell*.

First, with respect to the claims against the collections manager in her individual capacity, Chavez is a court employee enforcing a court order imposing a fine, and Giaccio cites no law supporting a claim that Chavez herself rather than the court has the authority to authorize community service instead of payment of the fine. And "[c]ourt [employees] 'have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion.'" *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. Unit A June 1981)). So the claims against Chavez in

her individual capacity are barred by judicial immunity and should be dismissed.

And, as to the official capacity claims against Chavez, where a plaintiff brings claims against both a public official, such as a law enforcement officer, in his official capacity and the public entity for which he works, the claims "essentially merge." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Court may then dismiss the claims against the public official as duplicative. *See Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996) (where the district court had dismissed claims against county commissioners in their official capacities "because those claims were duplicative of the claims against the County"); *see also Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) ("The Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001))).

Because Giaccio brings claims against both Chavez and the City of Carrollton, the official capacity claims against Chavez are duplicative and should be dismissed with prejudice.

As to the claim against the City of Carrollton, "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation

occurred and (2) that a municipal policy was the moving force behind the violation,"
*Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436
U.S. at 694).

Accordingly, "[i]n municipal-liability cases," the threshold question "is whether
the complained-of 'act may fairly be said to represent official policy.'" *Id.* at 792-93
(cleaned up; quoting *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483
(rejecting the argument that a district court errs by dismissing a *Monell* claim
without first analyzing the underlying constitutional violation).

And a plaintiff may proceed on a *Monell* claim only by

> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker
> can be charged with actual or constructive knowledge, and (3) a
> constitutional violation whose moving force is that policy (or custom)."
> *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up).
> Municipalities are not liable "on the theory of respondeat superior" and
> are "almost never liable for an isolated unconstitutional act on the part
> of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th
> Cir. 2009).

*Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *see also Brown v. Tarrant
Cnty.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim
fails as to one prong, a court "need not consider whether [his] claim also fails the other
two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th
Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of
written policy statements, ordinances, or regulations, but may also arise in the form
of a widespread practice that is 'so common and well-settled as to constitute a custom
that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617

- 10 -

(5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam) (en banc))); *see also Brown*, 985 F.3d at 497 ("An 'official policy' may take two forms – either a 'policy statement formally announced by an official policymaker' or a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Zarnow*, 614 F.3d at 168-69)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster*, 735 F.2d at 841). And "a plaintiff must allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010)).

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). And, although an alleged failure to train (or to supervise) "is a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal

- 11 -

liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted). But "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citation omitted).

This theory is also "limited to 'extreme factual situations,'" such that conduct may be unconstitutional but "not sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citations omitted)).

Most importantly, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo*, 2015 WL 5021393, at *5 ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

Here, Giaccio's municipal liability allegations are wholly conclusory. But, even

if they were not, Giaccio's allegations and the documents filed with her pleadings show that the City of Carrollton made multiple attempts to reach Giaccio regarding the citations, at least some of which were ignored, provided her with the opportunity to have alternate payment arrangements through a payment plan, provided her with the opportunity to appear at hearings to request community service or waiver of fees and granted community service as to a portion of the fines, and only threatened her with arrest for failure to appear at hearings after warnings. *See, e.g.*, Dkt. No. 3 at 2; Dkt. No. 5 at 5, 6, 10, 11.

Giaccio misstates *Bearden*'s holding to the extent that she contends that it requires the City of Carrollton to provide her with community service based solely on her claims that she cannot pay the fines. *Bearden* does not "'preclude[] imprisonment for willful refusal to pay a fine or court costs.'" 461 U.S. at 668 (quoting *Williams v. Illinois*, 399 U.S. 235, 242 n.19 (1970)).  For example, if a person "has willfully refused to pay the fine or restitution when [s]he has the means to pay" or fails "to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution," imprisonment could be appropriate. *See id.* And *Bearden* does not mandate community service or waiver of fines as the only alternate option, suggesting that a court could "extend the time for making payments, or reduce the fine" as well as suggesting community service as an option. *Id.* at 672.

The City of Carrollton has offered Giaccio an alternative payment plan, but she has refused that option and instead demanded the alternative of her choice for debts that have been pending since at least 2024. Giaccio's filings do not establish

municipal liability for a violation of *Bearden*. So her claim against the City of Carrollton should be dismissed with prejudice.

Finally, as to the John Doe defendants, "[g]enerally, Section 1983 claims must be asserted against identified persons, rather than 'John Doe' defendants." *Gibson v. Gusman*, No. 14-cv-2273, 2015 WL 5060854, at *3 (E.D. La. Aug. 18, 2015). "The federal rules make no provision for joining fictitious or 'John Doe' defendants in an action under a federal statute." *Staritz v. Valdez*, No. 3:06-cv-1926-D, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); *see also Francis v. Terrebonne Parish Sheriff's Office*, No. 08-cv-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009) (stating that "a § 1983 action must be filed against an actual identified person"); *Vollmer v. Bowles*, No. 3:96-cv-81-D, 1997 WL 102476, at *2 (N.D. Tex. Feb. 28, 1997) ("Neither the Federal Rules of Civil Procedure nor 42 U.S.C. § 1983 provides authority for joining fictitious defendants in this suit. The rules make no provision for the naming of 'Does' and later substituting a real person's name."). And such unidentified defendants cannot be served until they are able to be identified.

But even if Giaccio did now seek to amend her complaint to identify specific defendants, any attempt to do so would be futile for the reasons set forth above.

## II.   The Court should deny all injunctive relief.

For all the reasons stated above, Giaccio has not shown a substantial likelihood of success on her claims, so the Court should deny her motion for a temporary restraining order. *See Bluefield Water Ass'n*, 577 at 252-53.

Further, the Court should deny the motion for a temporary restraining order

because the relief that she seeks implicates abstention under *Younger v. Harris*, 401 U.S. 37 (1971). *See Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (quoting *Mitchum v. Foster*, 407 U.S. 225, 243 (1972); citing *Younger*, 401 U.S. at 43-47) (42 U.S.C. § 1983 provides for a cause of action where it is alleged that a state actor violated the Constitution but "does not 'qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding.'").

*Younger* abstention "applies only to three exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders ... uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (cleaned up). The proceedings at issue here clearly meet this requirement. *See generally* Dkt. No. 3.

The doctrine requires that federal courts decline to exercise jurisdiction where three conditions are met: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (cleaned up); *accord Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

And the United States Supreme Court has recognized that *Younger* abstention is appropriate where a federal plaintiff requests an injunction that would have the

practical effect of enjoining state proceedings. *See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13-14 (1987) ("Both *Juidice[ v. Vail*, 430 U.S. 327 (1977),]* and this case involve challenges to the processes by which the State compels compliance with the judgments of its courts. Not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained."); *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 671 (10th Cir. 2020) ("[B]oth *Juidice* and *Pennzoil* involved requests to directly or indirectly thwart state court compliance processes." (citing *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002) ("*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly."); *Zeeco, Inc. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-384-JED-FHM, 2017 WL 6539504, at *2 (N.D. Okla. Dec. 21, 2017) ("What *Younger*, *Juidice*, and *Pennzoil* have in common is that they all involved plaintiffs filing separate federal suits in an attempt to enjoin ongoing state proceedings."))).

And the additional *Middlesex County* factors are present here. Giaccio seeks for this Court to control the proceedings in a state court, to order it to stop issuing warrants to enforce its orders, and to report its determinations to this Court. *See* Dkt. No. 12 at 3. But the state court unquestionably has an interest in enforcing its own judgments and in doing so without oversight and control from this Court. And the state has established a procedure for appeal of municipal court judgments that would

more appropriately address any issues with the municipal court proceedings than supervision and monitoring from this Court. *See* TEX. CODE CRIM. P. § 45A.202.

Nothing in Giaccio's complaint and attachments or in her construed application for injunction establishes that the procedures established by the state do not afford an adequate opportunity for her to raise constitutional challenges in municipal court or on appeal. *See Pennzoil Co.*, 481 U.S. at 15 ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) ("Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims."); *Gates*, 885 F.3d at 880 ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court." (emphasis in original; citing *Moore*, 442 U.S. at 425)).

So Giaccio's motion for a temporary restraining order should also be denied under *Younger*.

### Leave to Amend

With respect to the recommendation to dismiss the complaint with prejudice, the time to file objections to this recommendation (further explained below) allows Giaccio an opportunity to explain how she would cure the deficiencies identified above (that is, provide enough facts to plausibly allege any waiver of immunity and to allege all elements of each claim) and thus show the Court that this case should not be

dismissed at this time and that the Court should instead grant Giaccio leave to amend her claims. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

But, if Giaccio fails to show that leave to amend should be granted, the Court should dismiss this case as set out in the recommendation below.

## Recommendation

The Court should deny the motion for a temporary restraining order [Dkt. No. 12] and dismiss the complaint with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

- 18 -

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 29, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE